IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELAINE MAHAN, )<br>    Plaintiff, )<br>v. )<br>    )<br>MOBILE HOUSING BOARD, )<br>    Defendant. ) | CIVIL ACTION 09-00535-KD-B |

**ORDER**

This matter came before the Court for a non-jury trial on March 22, 2011 in Mobile, Alabama. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record,[1] the Court makes the following findings of fact and conclusions of law:

**I. Procedural Background**

Plaintiff Elaine Mahan ("Mahan"), proceeding *pro se*, initiated this litigation on August 19, 2009, by filing a Section 1983 Complaint against the Defendant Mobile Housing Board ("Housing Board"). Mahan alleged violations of her civil rights in that the Housing Board "took" her Section 8 voucher without notifying her with a letter. (Doc. 1).

On April 6, 2010, Mahan filed an Amended Complaint alleging "retaliation, unethical, unjust, bureaucracy, civil rights-amendment to, constitution (13 and 14 Act of Congress), housing discriminating and racialist." (Doc. 22 at 1). Mahan also again asserts that the Housing Board failed to notify her by letter that her Section 8 benefits would be terminated. (Id.) At trial,

---

[1] Mahan presented very little evidence at the trial and instead appeared to rely on her previous submissions and statements. The Court has reviewed the evidence of record and has incorporated this evidence as background to the issues presented at trial.

1

Mahan also asserted that Mobile Housing Board violated her rights by assisting in the eviction by the landlord.

## II. Findings of Facts

### A. Mahan's Participation in the Housing Rental Assistance Program

Mahan has been a participant in the Mobile Housing Board Section 8 Housing Rental Assistance Program ("HAP") since August 16, 1995. (Doc. 39-2 at 1-2, 24 (Dep. Mahan at 13, 18)). HAP provides housing rental payment vouchers for participants based on family composition and income to supplement their monthly rent payable to landlords. (Doc. 39-3 at 26-27 (HAP Contract)).

In 2006 and during part of 2007, Mahan resided at 2904 Pleasant Valley Road, Apartment 118. (Doc. 39-2 at 2-3, 8 (Dep. Mahan at 18-19, 39)). In September 2006, the Housing Board discovered that Mahan failed to report an increase in her household income. (Id. at 3 (Dep. Mahan at 19)). See also Doc. 39-3 at 1. On September 22, 2006, the Housing Board sent Mahan a letter (at her Pleasant Valley apartment) noting her family's increase in income as of April 2005, and Mahan's failure to report same. (Doc. 39-3 at 2-3). The Housing Board calculated that it had overpaid for 16 months in the amount of $3,248.00, and stated that such overpayment must be repaid by Mahan. (Id.) The letter also notified Mahan of her rights, including the ability to request an informal hearing. (Id.)

On November 3, 2006, Mahan agreed that she owed $3,248.00 and entered into a payback agreement for rent underpayments at her Pleasant Valley apartment. (Doc. 39-2 at 4-5 (Dep. Mahan at 24-25); Doc. 39-3 at 2, 4). Mahan agreed to pay $500.00 down and then to pay the remaining $474.40 by November 13, 2006. (Doc. 39-2 at 5 (Dep. Mahan at 25); Doc. 39-3 at

2, 4). Mahan agreed to then repay by making monthly payments of $189.47 starting December 15, 2006 and ending December 15, 2007. (Doc. 39-3 at 4). By June 25, 2007, Mahan had a balance due of $1,496.13. (Doc. 39-3 at 5; Doc. 39-2 at 6 (Dep. Mahan at 32)). Mahan never made any additional payments on this payback agreement. (Doc. 39-2 at 6 (Dep. Mahan at 32)).

On July 18, 2007, the Housing Board made an internal "Explanation Note for Payback" regarding Mahan, which noted that Mahan's daughter started working on March 19, 2007, but that Mahan failed to report her daughter's income in a timely manner. (Doc. 39-3 at 6). On July 18, 2007, the Housing Board sent Mahan a letter (at her Pleasant Valley apartment) noting her family's increase in income as of 2007, and Mahan's failure to report same. (Doc. 39-3 at 7-8). The Housing Board calculated that it had overpaid in the amount of $690.00, and stated that such overpayment must be repaid by Mahan. (Id.) The letter also notified Mahan of her rights, including the ability to request an informal hearing. (Id.)

On July 20, 2007, Mahan entered into a second payback agreement in the amount of $690.00. (Doc. 39-2 at 8-9, 11 (Dep. Mahan at 39-40, 43); Doc. 39-3 at 9). Mahan made a down payment of $103.50 on this date, and agreed to pay $97.75 per month as repayment beginning August 15, 2007 and ending January 15, 2008. (Doc. 39-3 at 9). Mahan did not make any additional payments towards her remaining balance of $586.50. (Id.; Doc. 39-2 at 11 (Dep. Mahan at 43)).

On August 30, 2007, Mahan reported a decrease in income to the Section 8 office, reporting same to Sharon Foster. (Doc. 41 at 6 (Certification)). Based on this decrease, on November 2, 2007 the Housing Board sent Mahan a letter (to 308 Iroquois, Chickasaw, Al,

36611), notifying her that an adjustment was made, effective September 1, 2007, to the amount Mahan was required to pay. (Doc. 39-3 at 12; Doc. 39-2 at 13-14 (Dep. Mahan at 84-85)).

On October 15, 2007, the Housing Board sent Mahan a cancellation letter (to 308 Iroquois, Chickasaw, AL, 36611) stating that she was in arrears of her original payback agreement and had been since June 25, 2007. (Doc. 39-2 at 16 (Dep. Mahan at 53); Doc. 39-3 at 13-14). The Housing Board also notified Mahan at that time that she had only made a down payment on her second repayment agreement and thus, was also behind on her obligations under that separate agreement. (Doc. 39-3 at 13-14). Mahan was advised that the Housing Board was cancelling her Section 8 eligibility effective October 31, 2007, unless she paid the outstanding balances. (Id.) Mahan was also notified of her rights and that she could request an informal hearing. (Id.)

On October 19, 2007, Housing Board employees Geneva Galbraith and Sharon Foster conducted an informal meeting with Mahan to discuss her arrears under both payback agreements. (Doc. 39-2 at 15-16 (Dep. Mahan at 52-53)). At that meeting, the Housing Board determined that Mahan could continue her Section 8 benefits if she paid one-half of the amounts of the delinquent repayment agreements due at that time. See also Doc. 39-3 at 16-17 (Section 8 Voucher Worksheet).

On November 20, 2007, the Housing Board sent Mahan a second cancellation letter (to 308 Iroquois, Chickasaw, AL, 36611) notifying her of her arrears on both repayment agreements. (Doc. 39-3 at 18-19). She was notified that her Section 8 eligibility would be cancelled effective December 31, 2007 for her failure to comply with her Section 8 obligations as she breached the repayment agreements: "[a]s a result of your original failure to comply with your Section 8

4

obligation and your breach of the repayment agreement, we are canceling your Section 8 eligibility and our assistance effective December 31, 2007, unless you have paid $1,496.13 by December 19, 2007[;]" "[p]rior to cancellation of our assistance, you have the right to request, if you wish, an informal hearing. Such a request must be submitted to the Section 8 office, in writing, not later than December 1, 2007." (Id.) Mahan was thus advised of her rights, including a hearing. (Id.) Mahan was also informed that her landlord was possibly considering proceeding with eviction due to her non-payment of rent. (Id.)

Even though Mahan failed to bring her past due amounts current and failed to request an informal hearing by December 1, 2007, the Housing Board did not terminate her Section 8 payments on December 31, 2007. (Def.'s Trial Exh. A).

Mahan asserts that the Housing Board failed to calculate their portion of the rental correctly after she notified them of a decrease in income. (Mahan trial testimony).

### B. Lease with Patrick Douglas

In August 2007, Mahan entered into a rental contract with Patrick Douglas for a residence at 308 Iroquois, Chickasaw, AL. (Trial testimony of Douglas). The agreement provided that the rent would be $725 and also provided that non-payment would result in termination of the contract. (Id.) Douglas agreed to accept Section 8 assistance for the monthly payments. (Id.) Douglas entered into a HAP contract with the Housing Board which indicated that the Housing Board would pay $377.00 per month toward the rent owed by Mahan. (Def.'s Trial Exh. L). The agreement between the Housing Board and Douglas provided that the HAP contract terminates automatically if the lease is terminated by the owner or the tenant. (Id.)

In a letter to Mahan dated October 15, 2007, (to 308 Iroquois, Chickasaw, AL, 36611), Mahan's landlord, Patrick Douglas, Jr., noted Mahan's payment of $100.00 toward her September and October rents, indicating that Mahan still owed $596.00 for those months. (Def.'s Trial Exh. X). Douglas also notified Mahan that if full payment was not received in seven (7) calendar days, her lease would be terminated, Section 8 would be notified of her delinquency and action would begin as to her eviction and recovery of past due rents. (Id.)

In an October 27, 2007 letter from Mahan's landlord, Patrick Douglas, to Mahan (to 308 Iroquois, Chickasaw, AL, 36611), he gave her a second written notice regarding her unpaid rent, noting that a total of $745.00 will be due by November 7, 2007 and that if the full amount was not paid by that date, legal action would begin. (Id.)

In an October 30, 2007 letter from Douglas to Mahan (to 308 Iroquois, Chickasaw, AL, 36611), Douglas gave her a third written notice as to her unpaid rent, noting that he had received payment of $85.00 via money order but that $660.00 was still due by November 7, 2007. (Id.) Douglas also notified Mahan that her rent may increase to $493.00 per month in December but that currently, her share of the rent was $348.00 per month. (Id.)

On December 31, 2007, Douglas filed an unlawful detainer action against Mahan for failure to pay her share of the rent. (Def.'s Trial Exh. Z). The Housing Board made payments of $406 to Patrick Douglas on January 1, February 15, and March 1, 2008. (Def.'s Trial Exh. A)) The unlawful detainer action was dismissed on March 21, 2008, because Douglas had accepted partial payment for the rent after filing the action on December 31, 2007. (Douglas trial testimony).

On March 28, 2008, the Housing Board was contacted by Douglas and was requested to withhold payments because Douglas was in the process of filing a second unlawful detainer action against Mahan that needed to be resolved before any further payments were received. (Patrick Douglas and Geneva Galbraith trial testimony). The Housing Board agreed to withhold payments. (Id.)

Douglas filed a second unlawful detainer action against Mahan for failure to pay rent. (Def.'s Trial Exh. CC). A judgment was entered against Mahan and for Douglas on June 25, 2008. (Def.'s Trial Exhs. CC-DD). The judgment found that Mahan had failed to pay her portion of the rent for three months (April, May, June 2008). (Id.) Thereafter, Douglas, initiated eviction proceedings against Mahan for non-payment of rent and Mahan was ordered to vacate the residence within 30 days. (Douglas trial testimony). Mahan vacated her apartment on July 31, 2008. (Id) The Housing Board played no role, nor provided any assistance in Douglas' effort to evict Ms. Mahan. (Id.)

Since July 31, 2008, Mahan has not requested Section 8 Housing Rental Assistance from the Housing Board, nor has Mahan presented the Housing Board with any potential lease agreements. (Mahan trial testimony). Moreover, Mahan does not want further rental assistance from the Housing Board. (Id.)

On May 29, 2009, the Housing Board paid Douglas $1,624.00. (Def.'s Trial Exh. A). This payment was the Housing Board's portion of rent for April 2008-July 2008. (Galbraith trial testimony). This payment was made pursuant to the HAP contract between the Housing Board and Douglas which provided that payments would be made "while the family is residing in the Contract unit during the term of the HAP contract." (Id.)

### III. Conclusions of Law

While Mahan's *pro se* case is not a model of clarity, it appears that her claim is that she was the recipient of a Section 8 housing voucher, through the housing program administered by the Mobile Housing Authority, and that her housing voucher was terminated without proper notice.

Case law provides that claims concerning termination of Section 8 vouchers and due process are usually assessed under the rubric of Goldberg v. Kelly, 397 U.S. 254 (1970) and Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008). In Goldberg, the Supreme Court established the minimal requirements for due process in the termination of public assistance as follows: 1) timely and adequate notice giving reasons for termination; 2) opportunity to appear at the hearing and to present evidence and question witnesses; 3) the right to representation by counsel; 4) the right to an impartial decision maker; 5) the right to have the decision based on rules of law and the evidence presented at the hearing; and 6) the right to a written decision by the decision maker outlining the reasons for the decision. Goldberg, 397 U.S. at 267-271. The Court explained, "the pre-termination hearing has one function only: to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." Id. at 267. In Basco, the Eleventh Circuit applied the Goldberg standard to the termination of a Section 8 Voucher and explained:

> ….[T]he Supreme Court held [in Goldberg ] that the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated….The Supreme Court reasoned that the interests of the recipient in the uninterrupted provision of benefits and of the State in not wrongly terminating benefits outweighed the State's competing interest in summary adjudication….This reasoning applies with equal force to public housing

> assistance provided pursuant to Section 8, where eligible participants rely on subsidies to meet their basic need for housing….

Basco, 514 F.3d at 1182 at note 7 (internal citations omitted).

However, this analysis does not apply to this case. The reason that it does not apply is that there is no evidence that Mahan was terminated from eligibility for Section 8 housing. Although they threatened to do so, the Housing Board did not terminate or cancel Mahan's Section 8 benefits due to her failure to pay the amounts due under the two (2) payback agreements. Indeed, the Housing Board did not stop making subsidy payments on Mahan's behalf even though she was significantly in arrears. Rather, Mahan's failure to pay rent to her landlord, Mr. Douglas, resulting in her eviction, triggered a specific HAP contract cancellation.

Specifically, the HAP contract entered into between the Housing Board and Mr. Douglas provided that it terminates automatically if the lease is terminated by the owner, which occurred in this case. Once Mahan was evicted from her apartment by Mr. Douglas, the voucher that was attached to the Iroquois residence and the HAP contract terminated. In other words there was no valid contract under which Housing Board could provide rental assistance to Mahan. Thus, Mahan's claim that her Section 8 voucher benefits were terminated by the Housing Board "without notice" lacks merit.

Mahan's Complaint does not allege that the Housing Board played any role in the termination of Mahan's lease or her eviction, however, Mahan made this allegation at trial. To the extent that this allegation is proper at this stage of the litigation, the claim fails. In order to establish this claim Mahan must show that the Housing Board play "a pervasive role such that it could be said the [Housing Board] was responsible" for Mahan's eviction. See, e.g., Shell v. Foulkes, 362 Fed. Appx. 23, 27 (11th Cir. 2010).

There is no evidence that the Housing Board played a pervasive role in the eviction of Mahan. While Mahan asserts that the Housing Board miscalculated her benefits, she has failed to present sufficient evidence to support her claims. Moreover, Mahan provides no explanation as to why she did not pay any portion (even the portion she believed she owed) after November of 2007. Rather, Mahan simply quit paying any rent which precipitated the eviction proceeding.

## IV. Conclusion

Based upon the foregoing, it is **ORDERED** that the Court finds in favor of the Defendant, the Mobile Housing Board, on all of Mahan's claims.

A separate Judgment shall issue contemporaneously with this Order.

**DONE** and **ORDERED** this the **22nd** day of **March 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**